In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3135

Andrea N. Butler, Emmalea Butler
and Ted Butler,

Plaintiffs-Appellants,

v.

H. Dean Evans, individually and in his capacity
as Superintendent of the Indiana Department
of Education, Indiana Department of Education,
Jerry Thaden, individually and in his capacity
as Commissioner of the Indiana Department
of Mental Health, Dina Haugh, in her capacity
as Superintendent of LaRue D. Carter Memorial
Hospital, and Paul Ash, individually and in his
capacity as Director of the Indiana Division of
Special Education,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 91 C 216--Theresa L. Springmann, Magistrate Judge.

Argued May 9, 2000--Decided August 31, 2000

Before Manion, Kanne and Rovner, Circuit Judges.

Kanne, Circuit Judge.  As a child, Andrea "Niki" Butler experienced severe emotional and psychological troubles that made it difficult for her to be educated in a regular school. Her local school recommended that she be placed in a residential educational facility that could provide a structured setting designed to accommodate her condition. Before her local school and the Indiana Department of Education could process this placement, Niki Butler's condition forced her parents, Emmalea and Ted Butler, to have her committed to a psychiatric hospital for several months. After Niki was released from the hospital, the state of Indiana placed her in a residential educational facility. Nevertheless, her parents sought reimbursement from the state for the costs of Niki's hospitalization. We affirm the district court's denial of the Butlers' reimbursement claim because Niki's hospitalization did not result

from delays by the state of Indiana in processing Niki's placement, nor did the hospital care constitute "related services" reimbursable under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. sec.sec. 1400-1487.

## I.  History

The IDEA represents "an ambitious federal effort to promote the education of handicapped children." Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 179 (1982) (discussing the Education for All Handicapped Children Act, later amended and renamed the IDEA). Its purpose is "to ensure that all children with disabilities have available to them appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. sec. 1400(d). Among other things, the IDEA supplies the states with federal funding for specialized education services to assist eligible disabled children. In conformity with applicable federal guidelines, the state of Indiana administers those funds through the Indiana Department of Education and its local school systems. See Ind. Code sec. 20-1-6-4.

For each child in need of special education assistance, the state of Indiana convenes an IDEA case conference between parents and local officials to tailor an individualized education plan ("IEP") for the disabled student. See 20 U.S.C. sec.sec. 1401(11), 1414(d). In most cases, the local school or school cooperative can provide the necessary accommodations suggested by the IEP and keep the child in her regular school. However, in unusual circumstances, the local school is unequipped to provide the necessary services and must transfer the child to a special residential facility. Typically at that point, a local coordinating committee comprising a juvenile court judge, the child's parents and local education and health officials evaluates the child's condition and makes proposals to the local school board. The Indiana Department of Education administers these special cases through what it calls a Rule S-5 application, pursuant to which the local school can apply to the state for IDEA funding of a residential placement on the disabled child's behalf. See Ind. Code sec. 20-1-6-19; 511 Ind. Admin. Code sec. 7-12-5.

Niki Butler endured a series of emotional disturbances during her childhood and was diagnosed with severe schizophrenia. By her sixteenth birthday, she had suffered auditory and visual hallucinations, attempted suicide and struggled with paranoia and psychotic episodes. She eventually was hospitalized for six weeks at

Alexian Brothers Medical Center in August 1990. After evaluating Niki's case on November 16, 1990, her local school preliminarily recommended application for a S-5 residential placement. On February 12, 1991, the local coordinating committee agreed that Niki's condition warranted a residential placement and approved the proposed S-5 application to the Indiana Department of Education. On April 18, 1991, the local school authorities held an IEP case conference and agreed that Niki's condition required a residential placement for educational purposes. They devised an IEP that targeted basic academic skills and social behavior as key areas for instruction and suggested a number of placement options, including special classes in a private or public residential education facility. The IEP assumed that Niki would not be hospitalized and was ready for an educational placement.

However, during this prolonged administrative process, Niki's condition demanded immediate medical intervention. Following a request from Niki's school that she be examined by a psychiatrist, Niki's parents admitted her voluntarily to Valle Vista Hospital on March 15, 1991. Then, on April 23, 1991, before Niki's local school had filed its S-5 application with the Indiana Department of Education, Niki's parents transferred her to Our Lady of Mercy Hospital in Dyer, Indiana, where she would stay for the next six months. During her hospital stay, Niki received medical treatment for her psychiatric needs at a cost of $121,021.13. This care included daily psychiatric counseling, strong doses of Lithium and Stelazine and daily group and recreational therapy. The hospital retained two teachers and a teacher's aide on staff for patients from 9 to 11 a.m., and Niki received assignments from school while she was hospitalized. However, Our Lady of Mercy Hospital was not approved by the state as her IDEA residential educational placement, nor were these educational activities at Our Lady of Mercy Hospital conducted pursuant to Niki's IEP.

On April 24, the day after Niki was admitted to Our Lady of Mercy Hospital, Niki's local school corporation filed the long-anticipated S-5 application. Yet the next day, April 25, 1991, on their own initiative, Niki's parents filed a petition in Indiana state court for Niki's involuntary commitment. Her parents alleged in the commitment petition that Niki was suffering from a psychiatric disorder and presented a substantial risk of harming herself and others. On May 17, 1991, the court reviewed a physician's report and entered an order of commitment for Niki. The court agreed that Niki was mentally ill: "schizo-affective, paranoid, suicidal,

satanical and with a mental disorder needing long-term education, structural, locked residential protective placement." The court physician reported that a commitment longer than ninety days would be necessary for Niki's condition to stabilize, and the court suggested LaRue D. Carter Memorial Hospital, a state hospital operated by the Indiana Division of Mental Health, as the "most appropriate, least restrictive facility for placement." LaRue Hospital had no vacancies and could not immediately admit Niki, so the court ordered Niki to remain at Our Lady of Mercy Hospital until space opened at an alternate psychiatric institution designated by the Indiana Department of Mental Health.

Niki remained at Our Lady of Mercy Hospital for another five months awaiting a transfer. Our Lady of Mercy Hospital reported that Niki "worked toward a goal ultimately of residential treatment. . . . She showed significant gains. She ceased to be delusional and hallucinating. She slowly began to explore the relationship to family and to become more appropriate. Certainly the underlying pathology was still present throughout. As of the time of discharge she appeared to be stabilizing and preparing for transfer to residential care." She eventually transferred to LaRue Carter Hospital on November 6, and then pursuant to her IEP, moved to a residential special education program at the Maryhurst School in Louisville, Kentucky, on December 2, 1991. It was not until December 3 that LaRue Carter Hospital notified the court that Niki was no longer a danger to herself or others and that her civil commitment could be terminated.

Meanwhile, a class of disabled children and their parents filed a class-action lawsuit in federal district court against the Indiana Department of Education. The class alleged, among other things, that the long delays between the development of IEPs requiring residential placement and the actual residential placements violated the IDEA. Niki's parents added Niki and themselves as plaintiffs to the lawsuit in August. On April 8, 1993, Judge Rudy Lozano granted the plaintiffs' motion for partial summary judgment, explaining that "[a]n IEP must be implemented as soon as possible following the development of that IEP." Evans v. Evans, 818 F.Supp. 1215, 1222 (N.D. Ind. 1993).

After some negotiation, the parties submitted an agreed order settling the suit on June 20, 1994. The order provides that the plaintiffs were eligible to petition through administrative adjudication for "educational and related

services reimbursement for each member of the class who incurred costs for education and related services between the date of the IEP . . . and the date of actual placement." In addition, the agreed order concluded that the state of Indiana should place eligible disabled children in a residential facility no later than thirty days from their IEPs, "except where special circumstances require otherwise." The order explains, "Among the events that shall constitute special circumstances for purposes of this paragraph are IDOE's lack of receipt of notice [of the IEP]." The state of Indiana also agreed to waive all the charges that Niki accrued at LaRue Carter Hospital.

Pursuant to the administrative procedure described in the agreed order, the Butlers filed a reimbursement claim for Niki's bills from Our Lady of Mercy Hospital because the hospitalization occurred during the delay between completion of Niki's IEP on April 18, 1991, and her placement at the Maryhurst School on December 2, 1991. The Indiana Department of Education independent hearing officer approved the Butlers' claims. However, because the services that Niki received at Our Lady of Mercy Hospital were primarily medical and psychiatric, the Indiana Board of Special Education Appeals reversed the hearing officer's decision and found that Niki's psychiatric hospitalization was not "education or related services" as required for reimbursement by the agreed order. The Butlers appealed the final denial of their reimbursement claim to Judge Lozano who, with the parties' consent, referred the appeal to a magistrate judge. Magistrate Judge Theresa L. Springmann then affirmed the decision of the Board of Special Education Appeals.

II. Analysis

The Butlers appeal the district court's affirmance of the denial of their IDEA reimbursement claim by the Indiana Board of Special Education Appeals. Under the IDEA, parties may appeal the results of a state administrative proceeding to a district court. The district court "basing its decision on the preponderance of the evidence shall grant such relief as the court determines is appropriate." 20 U.S.C. sec. 1415(i)(2)(B)(iii). The district court must confer due weight to the final decisions of the state administrators and cannot substitute its own notions of sound educational policy for those of the school authorities. See Heather S. v. State of Wis., 125 F.3d 1045, 1052-53 (7th Cir. 1997) (quoting Rowley, 458 U.S. at 206); see also O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233, 144 F.3d 692, 698-99

(10th Cir. 1998). Now on appeal, we review the district court's judgment as a mixed question of law and fact, reviewing the ultimate determination de novo but reversing the court's factual findings only if clearly erroneous. See Heather S., 125 F.3d at 1053.

The agreed order in Evans declared that the Indiana Department of Education was obligated by federal law to place disabled children in residential facilities within thirty days of the IEP, except when "special circumstances require otherwise." In addition, the agreed order stipulated that the state of Indiana would reimburse the plaintiffs, after administrative adjudication of their claims, for qualified "educational and related services" incurred as a result of unreasonable delays between IEP development and residential placement. The Butlers contend that Niki's hospitalization expenses at Our Lady of Mercy Hospital are reimbursable costs under the agreed order.

The state of Indiana is not liable for Niki's hospitalization charges because those expenses resulted from "special circumstances." Local school officials approved Niki's IEP on April 18, 1991, but the IEP was designed only for a homebound placement and contemplated Niki's release from Valle Vista Hospital on April 23, 1991. The IEP recommended placement at a residential educational facility to serve Niki's particular educational needs, not placement at a hospital for further medical treatment. However, Niki's psychological condition demanded emergency action. On April 23, instead of bringing her home from Valle Vista Hospital, Niki's parents transferred Niki to Our Lady of Mercy Hospital and two days later commenced involuntary commitment proceedings. Niki's unstable psychological condition necessitated her hospitalization and rendered her unable to handle the residential placement recommended by the IEP. In fact, it was only after several months of care at Our Lady of Mercy Hospital that "she appeared to be stabilizing and preparing for transfer to residential care." By December, when Niki's commitment ended upon a declaration that she no longer posed a risk to herself or others, the state of Indiana had already moved her to the Maryhurst School for her residential placement. The district court and the Indiana Board of Special Education Appeals found that Niki's transfer to Our Lady of Mercy Hospital and subsequent commitment were special circumstances that delayed her residential placement. We do not find their conclusions clearly erroneous.

Moreover, Niki's hospital charges are not recoverable because only payments for "education

or related services" are reimbursable under the agreed order. The IDEA defines related services as "transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. sec. 1401(22). The IDEA lists a number of services as examples, including medical care, but stipulates "that such medical services shall be for diagnostic and evaluation purposes only." Id. Interpreting this clause, the Ninth Circuit held that inpatient psychiatric hospitalization, like Niki's treatment at Our Lady of Mercy Hospital, is not a special education placement and that the hospitalization is not a related service compensable under the IDEA. See Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, 903 F.2d 635, 643 (9th Cir. 1990). The court explained that the "analysis must focus on whether [the disabled child's] placement may be considered necessary for educational purposes, or whether the placement is a response to medical, social, or emotional problems that is necessary quite apart from the learning process." Id. Although the Butlers contend that Niki received some tutoring while hospitalized, we agree with the Indiana administrative hearing board and the district court below that Niki was admitted to Our Lady of Mercy Hospital almost exclusively for medical reasons, not for educational purposes, and received almost exclusively medical services, not educational ones. By April 1991, Niki's acute psychological condition demanded medical intervention and took precedence over her educational needs. As in Clovis, Niki's hospitalization was prompted by a psychiatric crisis, was not approved by her IEP and occurred at a medical facility that did not provide educational services and had not been approved by the state as her residential educational institution. Clovis, 903 F.2d at 643-45.

Niki's IEP did not authorize psychiatric hospitalization as a related service. The IEP determines the IDEA services that the state will provide subject to state approval and oversight. Federal regulations require that the educational placement of the disabled child be "based on his or her IEP," 34 C.F.R. sec. 300.552(b)(2), and Indiana law authorizes IDEA reimbursement for related services only if "[the IEP] case conference committee determines the student requires the related services in order to benefit from special education." 511 Ind. Admin. Code sec. 7-13-5(a). As the Butlers themselves point out, Niki's education review committee decided unanimously that Niki did not need hospitalization. The Butlers conflate the commitment proceedings and the IEP recommendations to argue that the Indiana

Department of Education authorized Niki's hospitalization. They characterize the court's decision to commit Niki as based on Niki's educational needs and point to the court's recommendation of LaRue Carter Hospital, an institution that the Butlers contend qualifies as a residential education placement. However, the commitment and IEP recommendations were decided independently in separate proceedings. Niki's parents committed and hospitalized Niki outside of the IDEA procedures and IEP recommendations.

By the Butlers' admission, Our Lady of Mercy Hospital is a medical hospital, not a residential education facility, and does not conform to the recommendations in Niki's IEP. There is scant evidence that the hospital provided or was equipped to provide anything more than meager educational services, and Our Lady of Mercy Hospital was not approved by the state to serve as Niki's IDEA residential educational placement under Indiana law. See 511 Ind. Admin. Code sec. 7-12-5(o) (requiring state authorization before placement); see also Clovis, 903 F.2d at 646 (disallowing reimbursement for hospitalization at a facility not certified by the state department of education). Niki's IEP authorized a residential placement in an educational facility, but her commitment required a long hospital stay instead and delayed the placement until December. The IDEA requires in certain cases that the state pay for institutionalized care or for tutors and trained specialists at residential educational placements, but only if "necessary to provide special education and related services." 34 C.F.R. sec. 300.302. The IDEA does not require reimbursement of medical-care costs for psychiatric hospitalization when, as here, the hospitalization addresses the child's medical, social or emotional disabilities apart from her special education needs. See Clovis, 903 F.2d at 646-47.

The Butlers do not argue that Niki's IEP was erroneous and should have recommended psychiatric hospitalization at Our Lady of Mercy Hospital. See, e.g., School Comm. v. Department of Educ., 471 U.S. 359, 369 (1985) (holding that reimbursement may be available when parents place their child in an educational placement which the IEP should have authorized in the first place). In Mrs. B. v. Milford Board of Education, 103 F.3d 1114, 1122 (2d Cir. 1997), the Second Circuit ordered state reimbursement for a disabled child's residential placement only after the court found that the child's IEP originally should have recommended that placement as the parents had insisted. Likewise in Seattle School District, No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996), the Ninth Circuit held that the

school district was liable for the costs of a residential placement at an accredited educational institution approved by the state for IDEA placements. The Butlers, however, did not challenge Niki's IEP and never requested a new case conference to design a new IEP. In any case, a revised IEP would not have authorized residential educational placement at Our Lady of Mercy Hospital because, as the Butlers' counsel admitted at oral argument, the facility "was not in the business of providing residential placement for educational purposes."

It is true that the IDEA requires the provision of certain medical accommodations within a regular school environment for disabled students. See Irving Independent Sch. Dist. v. Tatro, 468 U.S. 883 (1984); Seattle Sch. Dist., 82 F.3d 1493. For example, in Cedar Rapids Community School District v. Garret F., 526 U.S. 66, 68 (1999), the Supreme Court held that the IDEA required a school to provide a ventilator-dependent student with a full-time nurse during the school day. The Court reasoned that the sec. 1401(22) exclusion of medical services did not exclude reimbursement for indispensable in-school nursing because such "services that enable a disabled child to remain in school during the day provide the student with 'the meaningful access to education that Congress envisioned.'" Id. at 973 (quoting Tatro, 468 U.S. at 891). Provision of a nurse during the school day was borne of the student's educational needs because "the services at issue must be provided if [the student] is to remain in school." Cedar Rapids, 526 U.S. at 79; see also Tatro, 468 U.S. at 891 (finding that in-school catheterization, which enabled the child to attend school, was a related service).

In contrast, Niki's hospitalization was not an attempt to give her meaningful access to public education or to address her special educational needs within her regular school environment. This is not a case in which the disabled student needed medical assistance to remain in a regular school; Niki was committed to a psychiatric hospital. Niki might have continued to receive school assignments and some tutoring while hospitalized, but education was not the purpose of her hospitalization. Unlike in-school nursing in Cedar Rapids, Niki's inpatient medical care was necessary in itself and was not a special accommodation made necessary only to allow her to attend school or receive education. The IDEA does not require the government to pay for all the additional services made necessary by a child's disability, and it specifically excludes medical services except those "for diagnostic and evaluation purposes only." 20 U.S.C. sec. 1401(22). The district court and the state

appeals board were not clearly erroneous in finding that Niki's hospitalization was a medical service extending beyond diagnostic and evaluation purposes and thus excluded from reimbursement by 20 U.S.C. sec. 1401(22).

III.  Conclusion

For the foregoing reasons, we Affirm the decision of the district court denying the Butlers' IDEA reimbursement claim under the Evans agreed order.