## MEYER ET AL. v. THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 9,171. Filed June 8, 1916. Rehearing denied October 27, 1916. Transfer denied November 28, 1916.]

1. EASEMENTS.—*Fee Simple in Easement.*—A fee may exist in an easement. p. 162.

2. RAILROADS.—*Right of Way.—Title by Prescription.—Extent of Title.*—It is the general rule that where a railroad right of way is acquired by prescription, the company takes only an easement. p. 165.

3. RAILROADS.—*Right of Way.—Title by Prescription.—Interest Acquired.—Grant Presumed.*—The charter of a railway company authorizing it to acquire lands in fee for right of way purposes and providing that when the right of way should be procured the company "shall be seized in fee simple of the right to such lands" did not prohibit the railroad and its successors in interest from acquiring a less interest or smaller estate in the lands desired, and where the company, claiming title by prescription, has been in possession and occupation of lands used in the operation of its railroad for tracks and embankments for more than twenty years, such user of the lands being continuous and adverse to the claim or interest of any owner thereof, the grant presumed, and the prescriptive title acquired, from such use and occupancy is not that of an estate in fee simple, but is only a fee in an easement sufficiently comprehensive to protect the railroad's use of the land as exercised during such occupancy. p. 165.

From Marion Circuit Court (23,015); *Charles Remster*, Judge.

Action by the Pittsburgh, Cincinnati, Chicago, and St. Louis Railway Company against August B. Meyer and others. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Charles W. Smith, Henry H. Hornbrook* and *Albert P Smith,* for appellants.
*Samuel O. Pickens* and *Owen Pickens,* for appellee.

CALDWELL, C. J.—Appellee brought this action against appellants to quiet its title, alleged to be in fee simple, to a certain parcel of real estate situated in the block bounded by Chestnut, Morris, Wenzel (now Delaware) and Hanway (now Downey) streets in the city of Indianapolis. The tract as described in the complaint is an irregular quadrilateral, situated in the southwest corner of the block, being within the northeast angle formed by the intersection of Chestnut and Downey streets, the latter forming its southern and the former its western boundary.

The errors relied upon are based on appellant's exceptions reserved to the conclusions of law. The first conclusion is in effect that appellee is the owner in fee simple of the tract of land described in such conclusion, the boundaries of which are not identical with the boundaries of the tract described in the complaint. The former excludes a triangular parcel of ground included in the latter, situated in the extreme southwest corner of the block, while the eastern line of the former does not exactly coincide with the eastern line of the latter. The remaining conclusion is in substance that appellee is entitled to recover costs. The decree follows the conclusions.

Appellants in their brief clearly outline the scope of the controversy submitted for our consideration as follows: "There is but one question presented by this appeal: That question is whether under the facts specially found by the court, the appellee acquired a fee-simple title to the lands

covered by its tracks with proper clearance, or acquired but an easement.''

We proceed to consider such question. The finding to the extent necessary to a determination of such question is substantially as follows: By an act of the general assembly of the State of Indiana, approved February 2, 1832, the Madison, Indianapolis & Lafayette Railroad Company was created. In 1866, its successor, the Indianapolis & Madison Railroad Company, consolidated with the Jeffersonville Railroad Company, under the name of the Jeffersonville, Madison & Indianapolis Railroad Company. The latter, June 10, 1890, consolidated with certain other companies, thus forming appellee. Prior to October 9, 1890, the Jeffersonville, Madison & Indianapolis Railroad Company, or some one of its predecessors in title entered upon and extended in a northwesterly direction across the parcel of land described in the complaint a railroad consisting of a main track with a sidetrack paralleling it on either side, which tracks have been continuously maintained on such parcel of land and used for railroad purposes by such entering company and its successors in title, including appellee, to the present time. Rights acquired in such parcel of ground by virtue of the extension, maintenance and use of such railroad tracks thereon passed to such succeeding and consolidated companies in succession, including appellee. On said October 9, 1890, McCarty and others were the owners of the south part of the block bounded by the streets aforesaid, including the tract of land as described in the complaint, and as described in the conclusions and decree, subject, however, to the rights of the Jeffersonville, Madison & Indianapolis Railroad Company, and its assigns therein. On said day such owners conveyed the entire tract so owned by them to Elder. In 1892, Elder conveyed to Fahnley & McCrea, who on November 11, 1901, conveyed to appellants. Each of the deeds by which the successive conveyances from McCarty to appellants were accomplished, was duly re-

corded, and contained a clause excepting from its opera-
tion the rights of the railroad company and its assigns as
aforesaid. Facts are specifically found respecting the
boundaries of the parcel of land in said block, which such
railroad companies in succession have continuously occupied
and used in the operation and maintenance of such rail-
road, and for proper railroad purposes in connection there-
with, the parcel of ground so outlined being the same as
that described in the conclusions and decree. While Fahn-
ley & McCrea were the owners of the tract, formerly
owned by McCarty, the board of public works of Indian-
apolis placed against it by proper proceeding an assessment
amounting to $520.50, for constructing a public sewer
along Downey street. Fahnley & McCrea as owners signed
the waiver authorized by the statute, and thereafter prior
to conveying the tract to appellants paid the assessment
in full. Appellants, after the conveyance of the tract to
them in 1901 paid the taxes and municipal assessments
against it as they arose, except that in September, 1910,
appellee paid an assessment levied in its name in the sum
of $525.19 for the construction of a sidewalk along the east
side of Chestnut street, of which assessment and its pay-
ment by appellee appellants had no notice prior to the
bringing of this action. In 1913, preparatory to the exe-
cution of a purpose to elevate its tracks, appellee entered
into negotiations with appellants for the purchase and to
procure the conveyance to it by appellants of the lands de-
scribed in the complaint. Thereupon at appellee's invita-
tion, appellants submitted in writing a proposition to sell
and convey to appellee. Appellee received and retained
such proposition without response, and such negotiations
terminated and failed. Several days after such proposi-
tion was submitted, at a meeting before the board of public
works of Indianapolis, appellee by attorney asserted a claim
to the ownership of the lands described in the complaint.
This was appellant's first knowledge that appellee claimed

to own the lands, except such knowledge as is implied from the use of the lands as aforesaid.

There is included in the finding the following, respecting the parcel of ground described in the conclusion and decree: That it "has been in the possession of and used and occupied by the plaintiff in the operation of said railroad and by its embankment and tracks laid thereon for more than 20 years prior to the bringing of this action, and such use and possession by the plaintiff thereof has been continuous, open, notorious and adverse to the claim or interest therein of any owner thereof for more than 20 years prior to the commencement of this action."

The parties apparently agree that the finding discloses an adverse occupancy of the parcel of land described in the decree for more than the statutory period for the uses and purposes stated in the finding. They differ, however, respecting the nature of the right or title that exists in appellee by reason of such occupancy. Appellee contends that through such use and occupancy, it is seized in fee of such lands. It is appellants' position, however, that such occupancy has been limited to certain specific uses and purposes, and that by reason thereof appellee has acquired in such lands an interest in the nature of an easement or a prescriptive right merely to hold and use such lands for the purpose of maintaining and operating its railroad thereon and proper railroad purposes incident thereto, subject to which the title in fee is in appellants. We are not specifically advised by the finding as to the company with which originated the possession and occupancy of such parcel of ground continued through a number of intermediate and constituent companies to appellee. The finding on this subject is that some time prior to October 9, 1890, the Jeffersonville, Madison & Indianapolis Railroad Company or some one of its predecessors in title entered upon such lands and constructed a railroad. The general assembly, by an act approved February 1, 1834, changed the name of the

Madison, Indianapolis & Lafayette company to the Madison & Indianapolis Railroad Company. Acts 1834 p. 244. The parties agree that under the latter name, the company, in 1847, extended its line to and into the city of Indianapolis; that in so doing it entered upon the lands involved here and located and constructed its track over the same; and that the rights acquired by it and its successors including appellee in continuing the occupancy of said lands must be measured by the rights that the entering company would have acquired under the same circumstances, had the latter, rather than its successors, continued such occupancy and use as set out in the finding. As measuring the hypothetical rights of the entering company under the supposition aforesaid, and consequently the rights of appellee, and to sustain their respective contentions, the parties appeal to the said act of 1832 (Acts 1832 p. 181), by the provisions of which the Madison, Indianapolis & Lafayette Railroad Company, predecessor of the Madison & Indianapolis company, was created. To the end indicated, appellee points particularly to §19 of such act, which is as follows: "That when said corporation shall have procured the right of way as herein provided, they shall be seized in fee simple of the right to such land, and shall have the sole use and occupancy of the same; and no person * * * shall in any way interfere with, molest, disturb or injure any of the rights and privileges hereby granted or that could be calculated to detract from or affect the profits of such corporation." By reason of the reference in §19 to other provisions of the act an examination of certain other sections is necessary to a proper understanding of §19. Thus, §14 authorized the corporation to enter on any lands to make surveys and estimates for the purpose of locating its tracks. Section 15 declared it to be lawful for the corporation to obtain, by relinquishment in writing duly executed, the lands necessary for the construction and location of its road, and to

receive by donations, gifts, grants and bequests, made in writing as aforesaid, land, money, materials, etc., for the benefit of the corporation. Section 16 provided that in case any land needed for right of way purposes could not be obtained by relinquishment, or where a contract could not be made between the parties, such lands might be acquired for the purposes aforesaid by condemnation under the right of eminent domain, a proceeding to that end being outlined.

It will thus be observed that the act of 1832 makes provision for but two ways in which the railroad company might acquire a right of way, namely, by relinquishment and by condemnation. Section 19 does not literally provide that where a right of way was procured by either of such methods, the lands covered by such right of way should be held and owned by the corporation in fee simple. The language is that the corporation "shall be seized in fee simple of the right to such lands." Literally construed, the language used seems to refer to a right in the land as distinguished from the land itself. "A fee may exist in all estates in land; therefore, a fee may exist in an easement." *Branson* v. *Studabaker* (1892), 133 Ind. 147, 33 N. E. 98. The provisions that immediately follow are in harmony with such a construction, in that there are stipulations respecting exclusive use and occupancy and noninterference by others with the rights and privileges granted. It would seem that if the title acquired were a fee simple in the land, such added safeguards would follow as incidents of the fee, although not provided by express stipulation. However, the question of the title acquired by relinquishment or condemnation under the act is not an open one. Thus §§15, 16 and 19 of the act of 1846 (Local Laws 1846 p. 210 *et seq.*), by which the Peru & Indianapolis Railroad Company was created, are practically the same in effect as §§15, 16 and 19 of the act of 1832. Sections 15 and 16 of the former authorized the created corporation to acquire lands for right of way purposes by re-

lease, and by condemnation where a voluntary release could not be obtained. Section 19 of the act of 1846, in so far as concerns the questions involved here, is identical with §19 of the act of 1832. In *Newcastle, etc., R. Co.* v. *Peru, etc., R. Co.* (1852), 3 Ind. 464, it was held that where the created company proceeded by release or condemnation under the act of 1846, it acquired the lands by title in fee simple, the court saying respecting §19: "We think it simply intended as declaratory of the effect which the releases and condemnations of land spoken of in the 15th and 16th sections should have; that is, whether they should be taken to convey an easement, a right of way merely, or a fee-simple title, and declaring that it should be the latter."

*Newcastle, etc., R. Co.* v. *Peru, etc., R. Co., supra,* is recognized in *Cleveland, etc., R. Co.* v. *Coburn* (1883), 91 Ind. 557, as decisive of the construction of §19 involved in the former. In the Coburn case, the court was required to construe and determine the scope of §21 of the act of 1848 (Local Laws 1848 p. 182) creating the Indianapolis & Bellefontaine Railroad Company, which section is identical with §19 of the act of 1832, the latter, as we have said, being identical in legal effect with §19 of the act of 1846, construed in the Newcastle case. In the Coburn case the court speaks of the language of §21 as being somewhat obscure, and that had it not been judicially construed by the Newcastle case, it might be supposed to mean that the railroad company should be the owner of the right relinquished, "which might be a fee, or a less estate, or a mere easement, according to the terms of the written relinquishment." Respecting the construction placed on the corresponding section by the Newcastle case, the court said: "Under this construction, an unconditional relinquishment of the land undoubtedly would have vested in the railroad company the absolute fee simple of the land, but the statute under consideration can not be held to impair the right to make contracts." The court, in recognition of the right of the rail-

road company to accept by contract a conditional relinquishment or a conveyance of a right in lands less in quantity than a fee, says, in substance, that if the company could not procure an unconditional relinquishment, it was not required to accept a relinquishment coupled with conditions, but they might proceed by condemnation to acquire a fee; but that if it did accept a conditional relinquishment, such conditions, if precedent, must be performed in order that title might be complete, or that a failure to perform them, if subsequent, might defeat the estate relinquished. In that case lands were relinquished for right of way purposes, by written instrument held to create not an estate in fee simple but an estate upon condition subsequent.

The Coburn case may have an important bearing here, in that it holds that where the charter or the creating and enabling act of a railroad company authorizes it to acquire lands by specified methods for right of way purposes, and provides that lands acquired by such methods shall be held and owned in fee simple, such provisions of the charter or creating act not being exclusive in character, do not destroy or prohibit the exercise of the common-law power to contract. *Cincinnati, etc., R. Co.* v. *Geisel* (1889), 119 Ind. 77, 21 N. E. 470, also is instructive. That case involved the question whether a deed of release and quitclaim containing special provisions, executed to appellant's predecessors, conveyed the described lands in fee, or merely created therein an easement for right of way purposes. The court, in holding that only an easement was created, said: "We do not think the question before us is affected by the provisions of the charter of the appellant's grantor, for here the right is founded entirely upon contract, and not upon proceedings under the right of eminent domain. The question is not what estate might have been acquired, but what estate did the one party bargain for and the other convey? It does not follow that because a railroad company may take an estate in fee, or a right of way of defined width, it does

take such an estate, or such a right of way, for parties may by their contract create a less estate than a fee, or a right less in extent than that which the law authorizes the grantee to acquire.'' It would therefore seem to follow that while prescription creates the presumption of a grant, a .grant of the corpus of the land in fee simple is not necessarily presumed where the holder by grant may legally acquire an estate less in quantity or different in quality. As we have said, a fee may exist in an easement. *Branson* v. *Studabaker, supra.* ''The doctrine generally accepted is, that the right acquired by the power of eminent domain extends only to an easement in the land taken, unless the statute plainly provides for the acquisition of a larger interest.'' *Quick* v. *Taylor* (1888), 113 Ind. 540, 16 N. E. 588. See, also, *Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529, 30 N. E. 636; *Hoffman* v. *Zollman* (1911), 49 Ind. App. 664, 97 N. E. 1015.

It is also the general rule that where a railroad right of way is acquired by prescription, the company takes only an easement. 23 Am. & Eng. Ency. Law 704; 33 Cyc 150; Elliott, Railroads §402. As we have indicated, however, it is recognized that under the act of 1832 creating the Madison, Indianapolis & Lafayette Railroad Company, and the act of 1846 creating the Peru & Indianapolis Railroad Company, and the act of 1848, creating the Indianapolis & Bellefontaine Railroad Company, the courts hold that by condemnation or by release, in the absence of a contract to the contrary, the lands involved are acquired in fee. Likewise, under the Public Improvement Acts of 1835 and 1836 (Acts 1835 p. 25; Acts 1836 p. 6), construed in *pari materia,* it is held that the State by appropriation proceedings, under the power of eminent domain, acquired the appropriated lands in fee rather than an easement therein. *Water Works Co., etc.* v. *Burkhart* (1872), 41 Ind. 364. In recognition of the fact that title to the lands in fee is an interest or es-

tate therein in excess of the requirements of the public purpose involved, the Supreme Court, in *Indianapolis Water Company* v. *Kingan & Co.* (1900), 155 Ind. 476, 58 N. E. 715, cites a list of decisions to the effect that while the courts have abided by the decision in the Burkhart case as a rule of property, yet it has been reluctantly followed, and that the Supreme Court "has declared its unwillingness to extend the doctrine by construction beyond cases in which the State's grantee claims under the board's exercise of the power of eminent domain." Thus, in *Brookville, etc., Co.* v. *Butler* (1883), 91 Ind. 134, 46 Am. Rep. 580, the State, under the Public Improvement Act of 1836, had appropriated lands for canal purposes. The canal had been constructed in such a manner that at one point it overflowed a tract of low land forming a pond. In a suit involving the fee to the overflowed lands, commenced after such flowage had continued more than twenty years, it was held that while by the appropriation proceedings the state had acquired, and that it had transmitted to its grantees, title in fee to the land occupied by the canal and its appurtenances, yet (quoting from the Kingan case, *supra,* which reviews the Butler case), "that the flowage of water beyond the excavated channel did not evidence an appropriation, under the power of eminent domain, of the fee in the flooded land; that the right of flowage is merely an easement; that evidence of the fact of flowage for twenty years establishes of itself nothing more than a prescriptive right to such an easement."

The significance of the Butler case consists in the following: That under the act of 1836, the State, by appropriation proceedings, acquired title in fee to the lands appropriated. If the overflowed lands were necessary to the canal enterprise, the state by proceedings under that act would have acquired the lands in fee; the lands were in fact held by the state and its grantees for flowage purposes in connection with the canal enterprise for more than twenty

years.   From such use there originated a prescriptive right in the lands overflowed; the fact, however, that the state might have acquired the lands in fee, considered in connection with the exercise of such right for the prescriptive period, was not sufficient to raise the presumption that it had acquired the lands in fee, but established merely a right sufficiently broad to protect the use as it had been exercised; that is, that the prescriptive right was an easement of flowage rather than title to the lands in fee.

Whatever interest or estate appellee owns in the lands involved here is based on the fact of the use of such lands for the full prescriptive period, or in other words, such interest or estate is in the nature of a prescriptive right.   It is the use of the lands as indicated which the court finds to have been continuously and adversely exercised.   Appellee, in support of its contention that under the facts found it owns the lands in fee rather than an easement therein, constructs an argument in effect as follows:   That prescription creates the presumption of a grant; that by the act of 1832, appellee's predecessor was authorized to acquire lands in fee by relinquishment equivalent to a grant; a prescriptive right being established, a grant coextensive in quantity and identical in quality with the grant which appellee's predecessor was authorized to take by the terms of the creating act must be presumed, and hence that appellee must be declared to be the owner of the land in fee.   But, as we have established from a consideration of the decided cases, the fact that appellee's predecessor was authorized by its creating statute to acquire lands in fee for right of way purposes was not prohibitive of a right to acquire by contract, and hence by grant, a less interest or a smaller estate in the lands desired.   The question therefore arises whether from the established prescriptive right a grant of the lands in fee must be presumed or merely a grant of an estate or interest sufficiently comprehensive to protect the use as it has been exercised. *Indianapolis Water Co.* v.

*Kingan, supra,* is in point here. That case involved the question of the overflow of lands incident to the construction and operation of a canal built under the Public Improvement Acts of 1835 and 1836. There, as here, appellant's predecessors were authorized by such acts in a proper proceeding to acquire lands in fee for canal purposes. The flowage having continued for more than twenty years, the canal proprietors claimed title to the overflowed lands in fee. In holding against such contention, the Supreme Court said: "After possession for twenty years, the conclusive presumption arises of a grant or right ample enough to protect the possession. 'A prescriptive right can never be broader than the claim evidenced by user.' * * * The user by flowage evidenced no broader claim than a right of flowage; and such a claim is a mere easement." See, also, *Consumers Gas Trust Co.* v. *American Plate Glass Co.* (1903), 162 Ind. 393, 68 N. E. 1020; *Peoria, etc., R. Co.* v. *Attica, etc., R. Co.* (1899), 154 Ind. 218, 56 N. E. 210. *Brookville, etc., Co.* v. *Butler, supra; Hoffman* v. *Zollman, supra.*

We conclude that appellee's estate in the lands described in the decree, under the facts found, is an easement to use and occupy such lands for the purpose of maintaining and operating its railroad on and over the same, rather than an estate in fee simple in the land. It results that the cause must be reversed. Judgment reversed, with instructions to restate the conclusions of law in harmony with this opinion and to decree accordingly.

NOTE.—Reported in 113 N. E. 443. Railroads, right of way, estate or interest acquired, 6 Ann. Cas. 242; 13 Ann. Cas. 432; Ann. Cas. 1916E 763. Interest acquired by condemnation for railroad as easement or fee, 20 Ann. Cas. 572. As to right to acquire by adverse possession, Ann. Cas. 1915C 772.