Frank (Francis E.) SCHMITT, Lisa M. Schmitt, Jack Compton, and Carolyn Compton, for themselves and all others similarly situated, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. IP 99–1852–C–Y/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 22, 2001.

Nels Ackerson, Ackerson Group, Chartered, Washington, DC, Brian P. Williams, Kahn, Dees, Donovan & Kahn LLP, Evansville, IN, David C. Ford, General Counsel in Farm Bureau Inc., Indianapolis, IN, for plaintiffs.

Evelyn Kitay, Surface Transp. Bd., Office of the General Counsel, David W. Spohr, U.S. Dept. of Justice, Washington, DC, Thomas E. Kieper, U.S. Attys. Office, Indianapolis, IN, Andrea Ferster, Genereal Counsel, Washington, DC, Mary L. Davidsen, O'Brien & Davidsen, Noblesville, IN, for defendants.

## ENTRY ON PENDING MOTIONS

YOUNG, District Judge.

This Entry addresses the following motions: (1) Plaintiffs' Cross–Motion for Summary Judgment on the Schmitts' & Comptons' Title to the Abandoned Railroad Right–Of–Way; (2) Defendant's Motion to Strike Plaintiffs' Reply in Support of Their Motion for Summary Judgment; and (3) Plaintiffs' Motion for Class Certification. For the rea-

sons set forth below, the court **grants** Plaintiffs' Cross–Motion for Summary Judgment; **grants** Defendant's Motion to Strike Plaintiffs' Reply in Support of Their Motion for Summary Judgment; and **grants** Plaintiffs' Motion for Class Certification.

This court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act").

## I. Background

The Representative Plaintiffs ("Plaintiffs" "Comptons" and "Schmitts") own an interest in land constituting part of a railroad corridor formerly operated by the Peoria, Decatur and Evansville Railway, and subsequently by the Illinois Central Railroad and the Owensville Terminal Company, Inc. ("OTC"). The Plaintiffs contend that the Railroad obtained only an easement, which allowed the Railroad to occupy the right-of-way as long as the property was used for railroad purposes. Such easements are extinguished upon abandonment of railroad use, by operation of law.

In 1997, the OTC applied for abandonment exemption from the Surface Transportation Board ("STB"). Pursuant to the National Trails System Act (the "Rails-to-Trails Act"), 16 U.S.C. § 1247(d), the former railroad was converted for use as a recreational trail, rather than for continued railroad purposes. The Plaintiffs contend that because the statute permits non-railroad use of the line, the Plaintiffs cannot now obtain full possession of their land in the corridor, despite extinguishment of the easement on their property. Thus, according to Plaintiffs, the conversion of their property to recreational use following the cessation of the railroad operation constituted a taking for which they are entitled to just compensation under the Fifth Amendment to the United States Constitution and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Plaintiffs further allege that they have each sustained damage in the amount of $10,000 or less as a result of the taking.

In addition to asserting takings claims on their own behalf, Plaintiffs bring this action as representatives of a class consisting of all persons who own an interest in land constituting part of the railroad corridor in Posey and Gibson Counties, Indiana on which the Peoria, Decatur and Evansville Railway, the Illinois Central Railroad, or the OTC operated a railroad, and which corridor is now occupied or controlled by the Indiana Trails Fund, Inc., by authority of the Trail Use Order issued February 25, 1998, by the STB pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), and who have been damaged in the amount of $10,000 or less by being deprived of their rights to possession, control, and enjoyment of their land as a result of such Trail Use Order. Plaintiffs estimate that the proposed class consists of approximately 100 to 120 individual landowners, each of whom would have obtained full possession of his or her property upon abandonment of the rail line were it not for the operation of the Rails-to-Trails Act.

On July 27, 2000, the court heard oral argument on the Plaintiffs' Motion for Class Certification. Indiana Farm Bureau, as *amicus curiae* for the Plaintiffs, and Rails-To-Trails, as *amicus curiae* for the Defendant, also participated in the oral argument, and filed briefs in support of their respective positions. At the close of argument, the court asked the parties to address, by written memorandum, the ownership interest allegedly held by the Plaintiffs. On August 16, 2000, Defendant submitted its Opening Supplemental Memorandum on Status of the Ownership Interest Allegedly Held by Plaintiffs. On September 18, 2000, Plaintiffs filed Plaintiffs' Response and Cross–Motion for Summary Judgment on the Schmitts' & Comptons' Title to the Abandoned Right–of–Way. The court will begin its discussion with the Plaintiffs' Cross–Motion for Summary Judgment.

## II. Plaintiffs' Cross Motion for Summary Judgment

### A. Facts

1. The Schmitts and Comptons own land adjoining a section of railroad right-of-way formerly dedicated to railroad use which has now been converted to trail use pursuant to the National Trails Systems Act. Plaintiffs' Exs. 1–4.

2. This former railroad right-of-way was converted to trail use pursuant to a STB Notice of Interim Trail Use ("NITU") decision issued February 23, 1998. 1998 WL 75512 (ICC 1998).

3. This NITU was issued as a result of a Petition filed with the STB for exemption from abandonment proceedings by the OTC. *Id.*

4. The owner of the subject right-of-way interests before OTC was the Evansville Terminal Company, Inc. ("ETC"). *Id.*

5. Prior to the ETC, the "Indiana Hi–Rail" company owned the interests to the right-of-way, who in turn had purchased their interests from Illinois Central Railroad in 1986. Richard S. Simmons & Francis H. Parker, Railroads of Indiana (Ind. Univ. Press 1997), Plaintiffs' Ex. 5.

6. Illinois Central Railroad owned the interests to this right-of-way from approximately 1900 until 1986. *Id.*

7. Prior to that, the Peoria, Decatur & Evansville Railway Company was the operating railroad on the line. Founded in 1879, it entered bankruptcy in 1894 and sold its interests to Illinois Central Railroad in 1900. *Id.*

8. The former subject railroad right-of-way extended from Poseyville, Indiana to Browns, Illinois. 1998 WL 75512 (ICC 1998).

9. The Indiana portion of the right-of-way that was converted to trail use runs from Poseyville, Indiana to the Illinois border through Posey County. *Id.*

10. This portion of the right-of-way was acquired for recreational trail use by Indiana Trails Fund, Inc. *See id.*

11. In a filing required by an Act of Congress, in 1915, the Illinois Central Railroad Company filed with the Interstate Commerce Commission ("ICC") maps, each titled "Right–of–Way and Track Map" ("ROW Maps" or "Maps"), which showed, *inter alia,* the location of the subject Illinois Central Railroad right-of-way. (*See* ROW Map Ex. 6 & 7).

12. After the Illinois Central Railroad filed the ROW Maps with the ICC, the ICC issued documents titled "Lands Owned or Used for Purposes of a Common Carrier," which were land schedules detailing the railroad's reported interests, including the subject right-of-way ("Land Schedules"). Plaintiffs' Ex. 8.

13. These ROW Maps and Land Schedules are maintained by the Defendant United States Government at the National Archives and Records Administration in College Park, Maryland.

14. The Land Schedules correspond with the ROW Maps, such that one or two pages of a Land Schedule provide the same, albeit more readable, information as is provided on the ROW Maps.

15. The ROW Maps show the specific townships, range, and section numbers through which the subject right-of-way is located. *See* Plaintiffs' Exs. 6 & 7.

16. In small print, the maps also have names of individuals and "No. XX" printed alongside or onto the depicted right-of-way. *Id.*

17. This printed information is duplicated in the Land Schedules which provide information concerning "Parcel No.'s" and "Grantors"; also included in the Land Schedules are the date of conveyance, book and page number where recorded, or additional information in the "Remarks" section, such as "No deed found; held by adverse possession." *See e.g.,* Plaintiffs' Ex. 8 at 1.

18. The Comptons own two separate parcels, separated from each other, each of which are adjoining or traversed by the subject right-of-way. Plaintiffs' Exs. 3 & 4.

19. The first parcel, "Parcel I," lies in the North West quarter of the South East quarter of Section 5, Township 4 South, Range 13 West. Plaintiffs' Ex. 3.

20. The North West quarter of the South East quarter of Section 5, Township 4 South, Range 13 West is depicted on Map 8 of the ROW Maps, which corresponds with Sheet No. 14 of the Land Schedule. *See* Plaintiffs' Ex. 6; Plaintiffs' Ex. 8, at 4.

21. The ROW Map shows a "No. 7" printed on the South East quarter of Section 5, Township 4 South, Range 13 West. Plaintiffs' Ex. 6.

22. According to information supplied by the Illinois Central Railroad Company to the ICC on the corresponding Land Schedule for Parcel No. 7, there was no Grantor or recording of the instruction on this section of the right-of-way, and the Railroad Company stated "No deed found; held by adverse possession" on the property. Plaintiffs' Ex. 8, at 4.

23. The Comptons' Parcel I deed, dated April 15, 1980, excludes this railroad right-of-way in its description of lands owned and conveyed by the Compton predecessors in interest. The deed states, in pertinent part:

Also: The Northwest Quarter (NW1/4) of the Southeast Quarter (SE1/4) of Section Five (5), Township (4) South, Range Thirteen (13) West, containing Forty (40) acres, more or less, except the right-of-way of the Illinois Central Railroad running through said tract, supposed to be about 4.50 acres. Plaintiffs' Ex. B.[1]

24. The Comptons' second parcel of land, "Parcel II," is located in the West half of the South West quarter of Section Five in Township Four South, Range Thirteen West. Plaintiffs' Ex. 4.

25. The West half of the South West quarter of Section Five in Township Four South, Range Thirteen West is depicted on Map 8 of the ROW Maps, which corresponds with Sheet No. 14 of the Land Schedule. *See* Plaintiffs' Ex. 6; Plaintiffs' Ex. 8, at 4.

26. The ROW Map shows a "No. 9" printed on the right-of-way in the West half of the South West quarter of Section Five in Township Four South, Range Thirteen West, and "C.W. Bailey" right below the "No. 9." Plaintiffs' Ex. 6.

27. According to the information supplied by the Illinois Central Railroad Company to the ICC on the corresponding Land Schedule for Parcel No. 9, "C.W. Bailey et al" were the Grantors of this section of the right-of-way, as recorded in Book 20, Page 28. Plaintiffs' Ex. 8, at 4.

28. The instrument recorded in Book 20, Page 28, shows that Charles W. Bailey and Sarah E. Bailey deeded the following in longhand to the Railroad on January 14, 1881:

### Peoria, Decatur & Evansville Railway Company Right of Way Deed

Know all men by these presents that Chas. W. Bailey and Sarah E. Bailey *for and in consideration of the construction of the Peoria, Decatur & Evansville Railway* in Posey County State of Indiana, and for the further consideration of Sixty-eight and $^{25}/_{100}$ Dollars in hand paid, the receipt of which is hereby acknowledged *do grant, warrant and convey to the said Peoria, Decatur & Evansville Railway Company* of Indiana its successors and assigns, *a strip of land* one hundred and fifty feet in width, being a strip seventy five feet wide on each side of the center line of said Railway *as it now is located through his land* in Posey County, State of Indiana, described as follows to wit: lying in the west half of the Southwest Quarter of section five town four South range thirteen west.

It being distinctly understood that this *grant is for the purpose of construction, maintenance and operation of said Railway.* In Testimony Whereof

---

1. This is taken from Plaintiffs' Exhibits to Memorandum in Support of Plaintiffs' Motion for Class Certification.

the said Charles W. Bailey and Sarah E. Bailey hereunto set their hand and seal this 14 day of January 1881.

Plaintiffs' Ex. 11 at 45–46 (emphasis added).

29. The Schmitts also own two parcels, which adjoin each other, each of which are adjoining or traversed by the subject right-of-way. Plaintiffs' Exs. 1 & 2.

30. The first parcel, "Parcel III," lies in the South West quarter of Section 18, Township 4 South, Range 12 West, and is traversed by the subject right-of-way. *Id.*

31. The South West quarter of Section 18, Township 4 South, Range 12 West is depicted on Map 6 of the ROW Maps, which corresponds with the first page of the Land Schedule, Sheet No. 11. Plaintiffs' Ex. 8, at 1.

32. The ROW Map shows that there is a small segment of railroad right-of-way in the far South West quarter of Section 18. Plaintiffs' Ex. 7.

33. To the East of this segment is the Gwaltney property, and to the West is a "No. 6" Parcel Number. Plaintiffs' Ex. 7.

34. That parcel, Parcel No. 6 on the ROW Map (Plaintiffs' Ex. 7), and Parcel No. 6 on the Land Schedule, shows no Grantor information, nor information of a recorded deed, and was described by the Illinois Central Railroad Company, when submitting information to the ICC, as follows: "No deed found; held by adverse possession." Plaintiffs' Ex. 8, at 1.

35. The Gwaltney Deed, Parcel "No. 5," did not convey right-of-way property in the South West quarter of Section 18, Township 4 South, Range 12 West. Plaintiffs' Ex. 11, at 7–8.

36. On the ROW Map, there is no Parcel "No." identified between Parcel "No. 5" and Parcel "No. 6." Plaintiffs' Ex. 7.

37. Appropriation proceedings were initiated on property located in the South West quarter of Section 18, Township 4 South, Range 12 West. Affidavit of Susan Herrmann ("Herrmann Aff."), Plaintiffs' Ex. 12.

38. The parties dispute how the appropriation proceedings were ultimately concluded by the court. The Plaintiff represents that the appropriation proceedings were dismissed, Plaintiffs' Ex. 13, while the Defendants represent that they were ultimately consummated. Plaintiff's Ex. 12, Herrmann Aff., Ex. A, at 9 of 9.

39. The Schmitts also own property adjoining the northern side of the subject right-of-way in the North part of the North West Quarter of Section 19, Township 4 South, Range 12 West ("Parcel IV"). Plaintiffs' Exs. 1 & 2.

40. The Gwaltney deed, discussed *supra*, was recorded on February 4, 1881, and conveyed an interest to the Railroad on the subject right-of-way in the North part of the North West Quarter of Section 19, Township 4 South, Range 12 West. Plaintiffs' Ex. 11, at 7.

41. That deed, written in longhand, reads as follows:

### *Peoria, Decatur & Evansville Railway Company Right of Way Deed*

Know all men these Presents that Nancy Gwaltney, J.H. Gwaltney, J.M. Gwaltney, S. [?] Gatewood and Martha E. Gatewood his wife *for and in consideration of the construction of the of the construction of the Peoria, Decatur & Evansville Railway* in Posey County State of Indiana, and for the further consideration of three hundred Dollars in hand paid, the receipt of which is hereby acknowledge [sic] *do grant, warrant and convey to the said Peoria, Decatur & Evansville Railway Company* of Indiana its successors and assigns, *a strip of land* sixty feet in width, being a strip thirty feet wide on each side of the center line of said Railway *as it now is located through his land* in Posey County, State of Indiana, described as follows to wit: lying in the

North part of the **Northwest quarter of Section nineteen Town four south range twelve west** with privilege to waste or borrow earth material.

*It being distinctly understood that this grant is for the purpose of construction, maintenance and operation of said Railway.* In Testimony Whereof the said Nancy Gwaltney, J.H. Gwaltney, J.M. Gwaltney, S. [?] Gatewood and Martha E. Gatewood hereunto set their hand and seal this 16th day of November 1880.

Plaintiffs' Ex. 11, at 7.

42. The Endecotts also conveyed to the Railroad an interest in "the North half of the North West quarter of Section nineteen Town 4 South Range 12 West ..." to the railway company. *See* Plaintiffs' Ex. 11, at 1.

43. The Endecotts' deed, also handwritten, reads as follows:

### Owensville and Peoria Railway Company Right of Way Deed

Know all men by these Presents that Moses Endecott of Posey County Ind. for and in consideration of the construction of the Peoria Decatur & Evansville Railway in Posey County, State of Indiana, and for the further consideration of One Thousand Dollars in paid receipt of which is hereby acknowledged *does grant, warrant, and convey to the said Peoria, Decatur & Evansville Railway Company* of Indiana its successors and assigns, a strip of land 66 feet in width being a strip 33 feet wide over each side of the center line of said Railway as it now is located through his land in Posey County, State of Indiana, described as follows to wit:

The South West quarter of Section twenty (20) Town 4 South Range 12 West.

Also a strip of land one hundred feet wide being fifty wide on each side of the center line of said Railway as now located through the North half of the **North West quarter of Section nineteen Town 4 South Range 12 west** and also conveying a strip of and additional fifty-feet wide adjoining the one hundred feet strip described above commencing at the East end of the sidetrack as now located and running to the county road west, one thousand feet more or less. It being also agreed that the Railway Company will put in two cattle guards and two road crossing at their expense. *This grant is for the purpose of construction, maintenance and operation of said Railway.* In Testimony Whereof the said Moses Endecott hereunto set his hand and seal this 3rd day of January 1881.

Plaintiffs' Ex. 11, at 1.

44. The Illinois Central Railroad Company identified sixty parcels of land on its right-of-way in the 1919 Land Schedule issued by the ICC along this subject right-of-way. Plaintiffs' Ex. 8.

45. Of these sixty parcels, eleven were acquired by the Railroad through adverse possession, and the remaining forty-nine parcels were acquired through thirty-seven conveyance instruments. Plaintiffs' Ex. 8 & 11.

46. Of the thirty-seven conveyance instruments, twenty-nine instruments have either identical language to, or very similar language to, the highlighted text in the Bailey deed set out in ¶ 38 above. *See* Plaintiffs' Ex. 11, at 1–4, 7–9, 12–27, 30–33, 36–37, 40–41, 44–52, 56–63.

47. Of the remaining eight instruments, five have no title at the top of the instrument, and contain the following text: "This Indenture Witnesseth that [name] ... convey and warrant to Peoria, Decatur and Evansville Railway Company ... the following Real Estate ..." In addition, none of these five deeds contain language indicating the conveyances were for the purpose of railroad use. *See* Plaintiffs' Ex. 11, at 28–29, 34–35, 38–39, 53–54.

48. Of the remaining three instruments, the first contains language similar to the Bailey deed except for the omis-

sion of "It being understood that this grant is for the purpose of construction, maintenance and operation of the Railway." Plaintiffs' Ex. 11, at 5–6.

49. The second instrument of the remaining three is worded differently but describes the conveyance as being for "the purpose of the maintenance & operation of the Railway." Plaintiffs' Ex. 11, at 10–11.

50. The third instrument, likewise, refers to the purposes to which the conveyance is to be put, the cessation of which shall cause a reversion of the property. Plaintiffs' Ex. 11, at 42–43.

## B. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The record and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir.1996).

The moving party bears the burden of demonstrating the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden may be met by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. If the moving party meets its burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must present specific facts to show that there is a genuine issue of material fact. Fed.R.Civ.P. 56(e); *see also National Soffit*, 98 F.3d at 265 (citing *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991)).

## C. Defendant's Motion to Strike Plaintiffs' Reply

■ Before addressing the merits, the court will first discuss Defendant's Motion to Strike Plaintiffs' Reply to Plaintiffs' Motion for Summary Judgment. Defendant objects to the filing of Plaintiffs' reply because Plaintiffs' exceeded the 20–page limit allowed under Local Rule 7.1(b). A reply in excess of the 20–page limit is allowed only for "extraordinary and compelling reasons."

■ Compliance with the local rules is a matter of the court's discretion. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994). Here, Plaintiffs' reply exceeded the permissible page limit by 25 pages. Further, in Plaintiffs' motion for leave to file in excess of the relevant page limit (which was filed after Defendant's posed the instant motion to strike), Plaintiffs did not provide the court with "extraordinary and compelling reasons" to accept a long filing. Accordingly, the court **grants** Defendant's motion to strike.

## D. Discussion

The issue for the court is whether the Plaintiffs own an interest in the subject railroad corridor. This, in turn, requires the court to determine the nature or quality of title acquired by the Railroad on the right of way property.

### 1. Deed Construction

■ The object of deed construction is to ascertain the intent of the parties. *Clark v. CSX Transportation, Inc.*, 737 N.E.2d 752, 757 (Ind.Ct.App.2000) (citing *Brown v. Penn Central Corp.*, 510 N.E.2d 641, 643 (Ind. 1987)). If there is "no ambiguity in the deed, the intent of the parties must be determined from the language of the deed alone." *Brown*, 510 N.E.2d at 643. In construing a deed, a court "should regard the deed in its entirety, considering the parts of the deed together so that no part is rejected." *Tazian v. Cline*, 686 N.E.2d 95, 97 (Ind.1997). And, where the railroad is responsible for the language contained in a deed, the court construes the instrument in the light most favorable to the grantors. *Richard S. Brunt Trust v. Plantz*, 458 N.E.2d 251, 252 (Ind.Ct. App.1983).

■ A deed that conveys a right generally conveys only an easement. *Clark*, 737

N.E.2d at 758. As stated by the Indiana Supreme Court in *Brown:*

> The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement.

*Brown,* 510 N.E.2d at 644 (citations omitted).

■ Where the granting language in a deed is unambiguous, the court may disregard the cover and title of the instrument. Thus, "while the cover and title of the instrument may provide additional evidence of intent where the language of the deed is unclear, it is not dispositive of the nature of the conveyance." *Clark,* 737 N.E.2d at 758.

### 2. Compton Parcel I

■ The first parcel in dispute is that allegedly owned by the Comptons, which the parties have designated, for the court's convenience, as "Parcel I." Parcel I lies in the North West quarter of the South East quarter of Section 5, Township 4 South, Range 13 West, which is located along the same right-of-way segment that is depicted on Map 8 of the ROW Maps, and which corresponds with the information Sheet No. 14 of the Land Schedule. *See* Plaintiffs' Ex. 3; Plaintiffs' Ex. 6; Plaintiffs' Ex. 8, at 4.

According to the Map, the only information regarding this parcel number in that South East quarter of Section 5, Township 4 South, Range 13 West is a printed "No. 7" on the right-of-way, and no Grantor's name appears in that quarter of Section 5. *See* Plaintiffs' Ex. 6. According to the information supplied by the Illinois Central Railroad Company to the ICC on the corresponding Land Schedule for Parcel No. 7, there was no Grantor or recording of instrument on this section of right-of-way, and the only information supplied for that area was the following: "No deed found; held by adverse possession."

■ The court must now determine whether the Railroad Company acquired through adverse possession a prescriptive easement[2] for railroad purposes or fee simple title. Defendant argues that although a railroad company can acquire only an easement through adverse possession, that was not the state of the law at the time the Railroad Company acquired Parcel I. The cases cited by Defendant, however, do not support this proposition. *See Sherlock v. Louisville, N.A. & C. Ry. Co.,* 115 Ind. 22, 17 N.E. 171 (Ind.1888) (railroad acquired prescriptive easement after having used land for railroad purposes for over twenty years); *Jeffersonville, Madison & Indpls. RR. Co. v. Oyler,* 60 Ind. 383, 1878 WL 6268 (Ind.1878) (where prior grantors deeded property for a railroad right-of-way, and railroad had continuously for over thirty years, the railroad was entitled to its rights on the land regardless of whether subsequent owner had actual notice railroad's property interest). In point of fact, decisions by the Indiana court dating back to the early part of the 1900's hold that a right-of-way acquired by a railroad through adverse possession can yield no greater interest than an easement for railroad purposes. As stated by the court in *Consumers' Gas Trust v. American Plate Glass:*

> It is true that said railway company might have acquired the fee by grant, and that a title by adverse possession is as good as the best title known to the law, yet, unless all distinction in the law of adverse possession between the acquirement of the fee in land and the acquirement of an easement therein is to be lost sight of, consideration must be given to the nature of the user. The soundness of a title is one thing. The extent of it is quite another. A prescriptive right, where there is no color of title, cannot be broader than the claim which the user evidences. *Brookville, etc., Co. v. Butler,* 91 Ind. 134; *Peoria & E. Ry. Co. v. Attica, C & S Ry. Co.,* 154 Ind. 218, 56 N.E. 210; *Indianapolis Water Company v. Kingan & Co.,* 155 Ind. 476, 58 N.E. 715. Ordinarily, at least, there is no user by a

---

**2.** To establish the existence of a prescriptive easement, the evidence must show actual, hostile, open, notorious, continuous, uninterrupted

adverse use for twenty years under a claim of right. *Carnahan v. Moriah Property Owners Ass'n, Inc.,* 716 N.E.2d 437, 441 (Ind.1999).

railroad company beyond a user for the purposes of a right of way.

162 Ind. 393, 68 N.E. 1020, 1021 (Ind.1903). *See also Hoffman v. Zollman,* 49 Ind.App. 664, 97 N.E. 1015 (1912) (a railroad company can "secure no greater interest by prescription" than an easement for railroad purposes).

Thus, regardless of whether the Railroad Company could by its charter acquire land in fee, if it obtained the land through adverse possession, it obtained "an easement to use and occupy [the] land [ ] for the purpose of maintaining and operating its railroad on and over the same, rather than an estate in fee simple in the land." *Meyer v. Pittsburgh, Cincinnati, Chicago and St. Louis Ry.,* 63 Ind.App. 156, 113 N.E. 443, 447 (1916).

■ Having found the Railroad Company acquired an easement in the right-of-way, the court must finally determine whether the Comptons hold a fee interest in the right-of-way. The Compton's abstract of title and other chain of title documents, including the 1980 deed that conveyed Parcel I to the Comptons, states that the interest in the Northwest Quarter includes forty acres "except the right-of-way" of the Railway Company. Defendant argues the "excepting" language evinces a clear intent by the parties to exclude the right-of-way from the deed transfer. Citing no Indiana law, Defendant concludes the Comptons do not own a fee simple interest in the right-of-way. Plaintiffs respond that the Comptons do own the property in the Railroad right-of-way, and, in support thereof, cite the court to *Calumet National Bank v. AT&T,* 682 N.E.2d 785 (Ind.1997).

In *Calumet,* the landowner adjoining an abandoned railroad right-of-way sought damages for trespass against AT & T for the unauthorized installation of fiber optic cable in the right-of-way adjoining the landowner's land. The Indiana Supreme Court noted that it was confronting an issue of first impression on the issue of what interest, if any, an adjoining landowner held in railroad right-of-way when title documents on the property were silent as to the right-of-way. *Id.* at 790. In ruling the grantees to adjoining lands own to the center of the right-of-way when the title does not include the right-of-way, the Court held that "[w]here there is no language in any of the relevant deeds describing real property that includes the right-of-way, the title of the owners of land abutting railroad rights-of-way runs to the center of the right-of-way." *Id.*

While the *Calumet* decision is highly persuasive, it is not directly on point, for the Compton's deed *excludes* the Railroad right-of-way in its description of lands owned. The challenge for the court is to decide how the Indiana Supreme Court would decide this issue. *See Konradi v. United States,* 919 F.2d 1207, 1213 (7th Cir.1990) ("The decision of a federal court ... in any ... case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it.").

■ Public policy in Indiana disfavors the alienation of strips of land from abutting estates. *See Brown,* 510 N.E.2d at 644 (quoting *Ross, Inc. v. Legler,* 245 Ind. 655, 199 N.E.2d 346, 348) ("the alienation of [railroad rights-of-way] from ... the primary or parent bodies from which they are severed ... generally operates adversely to the normal and best use of the land"). The rationale behind this policy statement derives from a 1876 Indiana Supreme Court decision in which the Court addressed this issue in the context of streams:

[I]ts chief object is to prevent the existence of innumerable strips and gores of land along the margins of streams and highways, to which the title, for generations, shall remain in abeyance, and then, upon the happening of some unexpected event, and one, consequently, not in express terms provided for in the title-deeds, a bootless, almost objectionless, litigation shall spring up, to vex and harass those who in good faith had supposed themselves secure from such embarrassment.

*Ross v. Faust,* 54 Ind. 471, 1876 WL 6583, at *4 (1876). Given this longstanding policy objective, the court is persuaded that were the issue before the Indiana Supreme Court, it would find, even though the Comptons had such excepting language in their deed, that

the Comptons own the Railroad right-of-way from the center line of the right-of-way to their adjoining land. *See also* Ind.Code § 32–5–12–10 (2000) ("If a deed [that contains a description of the real property that includes the right-of-way] does not exist, then the railroad's interest vests in the owner of the adjoining fee. The interest of the railroad that vests in the adjoining owners is for the portion of the right-of-way from the center line to the right-of-way to the adjoining property line"). For these reasons, the court finds that the Railroad Company had only an easement in Parcel I, and that the Comptons have an interest up to the center line of said right-of-way. The court therefore **grants** Plaintiffs' Cross–Motion for Summary Judgment on Parcel I.

### 3. Compton Parcel II

The second parcel in dispute is that allegedly owned by the Comptons, which has been designated as "Parcel II." Parcel II was formerly owned by the Baileys, who in turn deeded an interest in Parcel II to the Railroad. The deed reads as follows:

#### Peoria, Decatur & Evansville Railway Company Right of Way Deed

Know all men by these presents that Chas. W. Bailey and Sarah E. Bailey *for and in consideration of the construction of the Peoria, Decatur & Evansville Railway* in Posey County State of Indiana, and for the further consideration of Sixty-eight and $^{25}/_{100}$ Dollars in hand paid, the receipt of which is hereby acknowledged do *grant, warrant and convey to the said Peoria, Decatur & Evansville Railway Company* of Indiana its successors and assigns, *a strip of land* one hundred and fifty feet in width, being a strip seventy five feet wide on each side of the center line of said Railway *as it now is located through his land* in Posey County, State of Indiana, described as follows to wit: lying in the west half of the Southwest Quarter of section five town four South range thirteen west.

It being distinctly understood that this *grant is for the purpose of construc-*

*tion, maintenance and operation of said Railway.* In Testimony Whereof the said Charles W. Bailey and Sarah E. Bailey hereunto set their hand and seal this 14 day of January 1881.

Plaintiffs' Ex. 11 at 45–46 (emphasis added).

Stripped to its bare essentials, this deed (1) grants, warrants and conveys (2) a right-of-way deed (3) to the railroad (4) for the purpose of construction, maintenance and operation of the railroad company. The words "grants warrants and conveys" are words typically employed by grantors who grant an estate in fee. *Clark,* 737 N.E.2d at 761. Although the granting clause "is the most dependable expression of the grantor's intention," *id.* at 758 (citation omitted), the court's inquiry is not at an end. The court "must consider the deed in its entirety and also the known use to which the property was to be subjected and therefrom give the conveyance the effect intended by the parties." *Ross,* 199 N.E.2d at 349. The Bailey deed explicitly states the purpose for which the Railroad was to use the "strip of land" by stating that the "grant is for the construction, maintenance and operation of said Railway." Such language is persuasive evidence that the Baileys intended to convey only an easement. *See Brown,* 510 N.E.2d at 644. The obvious conflict in the language employed in the Bailey deed creates an ambiguity as to whether the Baileys intended to convey the land in fee simple. Where, as here, the deed was prepared by the Railroad Company, the ambiguity is construed in favor of the grantor and against the drafter. *See Plantz,* 458 N.E.2d at 252. Accordingly, the court finds the Baileys conveyed only an easement to the Railroad. Therefore, the court **grants** Plaintiffs' Cross–Motion for Summary Judgment as to Parcel II.

### 4. Schmitt Parcel III

The Schmitt Property, "Parcel III," lies in the South West quarter of Section 18, Township 4 South, Range 12 West, and is traversed by the subject right-of-way. Defendant argues the Railroad acquired the land through condemnation proceedings, while the Plaintiffs assert that those proceedings were dismissed by the court and that

the Railroad Company took title in Parcel III by adverse possession. (*Compare* Plaintiff's Ex. 12, Herrmann Aff., Ex. A, at 9 of 9, *with* Plaintiff's Ex. 13).

■ Longstanding Indiana law holds that a railroad company acquires only an easement through condemnation proceedings. *See Hoffman*, 97 N.E. at 1017 ("It is settled law of this state that a railroad company by condemnation proceedings for a right of way acquires only an easement in the land appropriated"). *See also Quick v. Taylor*, 113 Ind. 540, 16 N.E. 588 (Ind.1888) (Under Indiana law in effect in 1883, railroad company held only an easement in its right-of-way by virtue of condemnation proceedings). Further, as previously stated, a railroad company acquires only an easement through adverse possession. *Hoffman*, 97 N.E. at 1017; *Consumers' Gas Trust*, 68 N.E. at 1020; *Meyer*, 113 N.E. at 447. Thus, no matter how the Railroad Company acquired its interest in Parcel III, it was limited to obtaining only an easement for railroad purposes. Accordingly, the court **grants** Plaintiffs' Cross–Motion for Summary Judgment as to Parcel III.

### 5. Schmitt Parcel IV

■ The Schmitts' Parcel IV property, which is immediately adjacent to and East of their Parcel III property, lies in the North part of the North West Quarter of Section nineteen, Township 4 South, Range 12 West. Plaintiffs' Exs. 1 & 2. As is evident from Finding of Fact ## 40–43, that segment of the Railroad right-of-way was acquired through a deed conveyed either by the Gwaltneys or the Endecotts to the Railroad in 1880 or 1881.

A reading of the Gwaltney deed reveals that it is similar, in all material respects, to the Bailey deed, which this court found, in Section II.C.3 of this opinion, granted the Railroad Company only an easement for railroad purposes.

In addition, the language employed in the Endecott deed is materially identical to the Gwaltney deed. For example, it is entitled "Right of Way Deed," and it expressly stated that "This grant is for the purpose of construction, maintenance, and operation of said Railway." The deed also stated that it was "agreed that the Railway Company will put in two cattle guards and two road crossings at their expense." *Id.* Therefore, the court finds that, no matter which deed controls, either the Gwaltney deed or the Endecott deed, the result remains the same—the Railroad Company acquired only an easement for railroad purposes. Accordingly, the court **grants** Plaintiffs' Cross–Motion for Summary Judgment as to Parcel IV.

### III. Motion for Class Certification

#### A. Standard

■ The decision whether to grant or deny a motion for class certification lies within the broad discretion of the trial court. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). The Supreme Court has held that "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in a manner to each member of the class.'" *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

■ Class action suits are governed by Federal Rule of Civil Procedure 23. A party seeking class certification bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n*, 7 F.3d at 596. Rule 23 prescribes a two-step analysis to determine whether class certification is appropriate. First, a plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). These elements are a prerequisite to certification, and failure to meet any one of them precludes certification of a class. *Retired Chicago Police Ass'n*, 7 F.3d at 596. Second, the action must also satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977). Plaintiffs seek certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions

affecting only individual members, and that a class action is superior to other available methods of fair and efficient adjudication. Defendant opposes Plaintiffs' motion, arguing that Plaintiffs cannot meet any of the requirements of Rule 23(a) or 23(b)(3).

■ Class certification is a procedural issue. Thus, in deciding whether an action should be certified as a class, the trial court is generally not permitted to conduct a preliminary inquiry into the merits of the underlying case. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### B. Rule 23(a)

#### 1. Numerosity

■ As discussed above, Plaintiffs must show that the putative class is so numerous that joinder of all members is impracticable. To determine the practicability of joinder, the court must consider: "the size of the potential class, [the] ease of identifying the potential members and determining their addresses, their geographic dispersion, and whether their individual claims are so small as to inhibit them from pursuing their own claims." *Young v. Magnequench Int'l, Inc.,* 188 F.R.D. 504, 506 (S.D.Ind.1999). Thus, no magic number satisfies this element. *Id.* Lastly, in determining numerosity, "the court considers judicial economy and the ability of class members to institute individual suits." *Evans v. Evans,* 818 F.Supp. 1215, 1219 (N.D.Ind.1993)

Here, the parties agree that the putative class comprises of approximately 100 to 120 members. In *Evans,* the court found that a class comprising of between 100–200 class members was sufficient to meet requirements of Rule 23(a)(1). *Id.* (citing *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) ("generally less than twenty-one [putative class members] is inadequate, more than forty adequate, with numbers varying according to other factors.")).

Moreover, the court finds that the value of the putative class members' claims is relatively small, making it difficult for the individual class members to institute individual claims. Thus, while joinder would not be impossible, it would certainly be "extremely difficult or inconvenient." *Evans,* 818 F.Supp. at 1219. Therefore, the court finds the Plaintiffs satisfy the numerosity requirement of Rule 23(a)(1).

#### 2. Commonality

■ Next, Plaintiffs must meet the commonality requirement of Rule 23(a). This requires the Plaintiffs to show that there are "questions of law or fact common to the class." Fed.R.Civ.P.23(a)(2). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditis,* 963 F.2d 1013, 1017–1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981)). Rather, the commonality requirement is usually satisfied so long there is a single issue [ ] common to all class members. *Evans,* 818 F.Supp. at 1219 (N.D.Ind.1993).

In this case, the court finds that there are questions of law and fact common to the trail-wide class. First, this action is based upon the uniform application of a single federal statute. Second, each individual landowner, due to the imposition of the Trail Use Order, contends that they suffered a taking of their property without just compensation. Thus, the court finds that the Plaintiffs claims and the claims of the putative class members are based on common issues of fact and of law. Accordingly, the court finds the Plaintiffs satisfy the commonality requirements of Fed.R.Civ.P. 23(a)(2).

#### 3. Typicality

■ The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (citations and internal quota-

tion omitted). To meet the typicality requirement, "the named representatives must establish the bulk of the elements of each class member's claim when they prove their own claims." *Allen v. City of Chicago,* 828 F.Supp. 543, 553 (N.D.Ill.1993).

The same reasons that support the court's finding of commonality are also present to support a finding of typicality. The claims of the putative class all arise from the same course of conduct of the United States government with respect to the class as a whole and are based on the same legal theories. The fact that the language of the Plaintiffs' deeds contain language similar in nature to the deeds of the putative class further reinforces the fact that the claims of the Plaintiffs are typical of the putative class members' claims. (*See* Findings of Fact ## 44–50). Accordingly, the court finds the Plaintiffs satisfy the typicality requirement.

### 4. Adequacy of Representation

The last requirement of Rule 23(a) is adequacy of representation. Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing *General Tel. Co. of the Southwest,* 457 U.S. at 157–158, n. 13, 102 S.Ct. 2364). The relevant inquiry is: "(1) whether conflicts of interest exist between the representatives and the rest of the class members; and (2) whether Plaintiffs' counsel will adequately protect the interests of the class." *Evans,* 818 F.Supp. at 1220.

Based upon a reading of the facts thus far, the court finds no conflict of interest exists between the Plaintiffs and the putative class members. As has been stated numerous times, the Plaintiffs' property has been taken pursuant to a single federal statute, the Rails–to–Trails Act, under the same procedures applicable to all class members. Moreover, the parties agree that Plaintiffs' counsel is more than adequate to represent the interests of the class. Therefore, the court finds the Plaintiffs satisfy the requirement of adequate representation.

### C. Rule 23(b)(3)

Having satisfied the certification requirements of Rule 23(a), the Plaintiffs must demonstrate that this action meets the demands of Rule 23(b). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual class members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231.

In this case, the court finds common issues predominate over individual issues because the entire case arises from a common nucleus of operative fact—the imposition of interim trail use pursuant to a statute uniformly applied to class members' land. The fact that individual claims may ultimately be reviewed to apply the legal principles to individual class members does not change the court's decision, for all that Rule 23(b)(3) requires is "an essential common factual link between all class members and the defendant for which the law provides a remedy." *Johns v. DeLeonardis,* 145 F.R.D. 480–484 (N.D.Ill.1992). Further, the court finds that because the individual claims are such that it makes no economic sense to bring individual suits, a class action is the most efficacious vehicle of adjudication. Thus, in light of the foregoing and in the interest of judicial economy, the court finds that a class certification is appropriate.

### IV. Conclusion

For the reasons stated in the court's opinion, the court **grants** Plaintiffs' Cross–Motion for Summary Judgment on the Schmitts' & Comptons' Title to the Abandoned Railroad Right–Of–Way. The court also **grants** Defendant's Motion to Strike Plaintiffs' Reply in Support of Their Motion for Summary Judgment, and **grants** Plaintiffs' Motion for Class Certification.